Filed 7/29/21  P. v. Smith CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C090708 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF20171569) |
| v. | |
| SHANE SMITH, | |
| Defendant and Appellant. | |

Defendant Shane Smith pled guilty to possession of a controlled substance for sale (Health & Saf. Code, § 11378) and misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) with a maximum possible sentence of three years.  The plea deal granted defendant deferred judgment on the felony pending the completion of certain conditions, including an addiction treatment diversion program.  However, if it was determined that diversion was "not feasible" for defendant, defendant was permitted to withdraw from the plea agreement.  Defendant failed to engage with the diversion program and then moved to withdraw from the plea agreement, which the trial

court denied. On appeal, defendant argues that the trial court violated his due process rights when it denied his motion to withdraw, because his failure to engage in the diversion program constituted *prima face* evidence the program was not feasible, and thus he should have been permitted to withdraw from the plea agreement. Disagreeing with defendant, we affirm the judgment.

## I. BACKGROUND

The underlying facts of this case are not relevant to this appeal. It suffices to say that the police discovered several pills of MDMA and $1,195 in defendant's possession during a traffic stop. After the police obtained a search warrant, they found texts on defendant's cellphone discussing drug-related transactions.

### A. *The Plea Deal*

Shortly before trial was set to begin, with 82 potential jurors waiting outside, the People announced that the parties had reached a tentative plea deal in which defendant would plead guilty to misdemeanor possession and enter a deferred plea on felony possession with the intent to sell. The prosecutor explained that under the terms of the deal, defendant would have to either complete Addiction Intervention Court (AIC) or the comparable Steps to Success Program. However, the parties did not yet know the specifics of the diversion programs, including whether the programs were available or whether defendant could use medical marijuana in either program. Without that information, defense counsel said that he was unable to advise defendant whether to take the deal. The trial court was unhappy that the parties waited until the trial date before reaching a tentative agreement and expressed concern about cancelling the trial with the plea deal still uncertain. To alleviate these concerns, the parties offered to formalize an agreement that day, which would give defendant the ability to withdraw his plea if "it was just too logistically inappropriate."

The trial court agreed with this approach, as it had been hoping for a resolution but did not "want [defendant] in a position where he's set up for failure either." The court

2

explained that it would take the plea, and "if we can't hammer out all the issues, and we all know what they are, that he'll withdraw and we'll try again." The attorney in charge of the AIC program appeared at the hearing and explained that AIC was full and asked for two months to "figure out what we're going to do with him. In two months, we are either going to ask to withdraw the plea or ask for him to be sentenced depending on where we land." He explained that the two-month window would allow sufficient time for Steps to Success to assess defendant for the program and modify his grant for the program to fit his circumstances.

The trial court then restated the terms of the plea, wherein defendant would be placed on probation for the misdemeanor and judgment on possession with intent to sell would be deferred so long as defendant was meaningfully engaged in treatment. Defendant could use medical marijuana if it was approved as a treatment option. Both counts would be dismissed if defendant successfully completed the diversion program. The trial court further explained that "if it is determined prior to sentencing that diversion is not feasible . . . defendant will be allowed to withdraw his plea and reset this case for jury trial." The parties agreed to these terms, and the trial court set a follow up hearing for five weeks out.

As written, the plea agreement stated that "if it is determined prior to or at sentencing that diversion is not feasible for [possession with intent to sell] for the defendant then the defendant will be allowed to withdraw this plea and reset his case for jury trial. He must successfully complete either AIC or Steps to Success." It further stated that "[s]o long as the defendant is meaningfully engaged in treatment, judgment for [possession with intent to sell] will not be entered."

B. *Defendant's Lack of Compliance*

Five weeks later, defendant appeared before the trial court. The trial court told defendant that it was disappointed with defendant's apparent unwillingness to attend the Steps to Success program. Defendant assured the court that he was still willing to

3

complete the program.  The trial court responded, "[b]ut you need to want to do it.  If you don't want to do it, tell us now, we'll just set it for trial again."  Defendant responded, "I want to do it."  The trial court continued the matter for six weeks so defendant could go forward with the program.

Several weeks thereafter, defendant missed his court date and the probation department arrested him.  At the next hearing, defense counsel said that the Steps to Success representative would give defendant "one more opportunity to do the diversion."  The prosecution responded, "I do show he was pending a Steps to Success referral which means [defendant] had to show up and actually participate.  I think he might have the message now."  Defendant was placed on supervised release, and the matter was continued for diversion review.

One month later, the prosecutor reported that defendant had taken "very minimal efforts to engage in the programs," as he had only made one call to probation to get the contact information for Steps to Success and did not follow up.  Because of this, as well as defendant's prior failure to appear in court, the prosecutor was "leaning towards asking the Court to enter a judgment" on the felony charge.  Defendant argued that because defendant attempted to contact the program, judgment would be premature.  The trial court expressed its disappointment that defendant failed to take advantage of the opportunity afforded by his plea deal.  It requested a memo from probation and set a hearing date for entry of judgment, at which time they would "have some real serious discussions" about whether to enter judgment.  The trial court then stated, "[b]ut I tend to agree with [the prosecutor]; it's not looking good."

A subsequent probation status report stated that defendant continued to demonstrate "marginal effort in applying himself with engaging in the tasks as discussed . . . for the [Steps to Success] program."  The next probation status report said that "[m]ultiple attempts made to help [defendant] engage in the [Steps to Success] program have been unsuccessful.  The defendant refuses to engage or demonstrate interest in

4

receiving services . . . [and] the defendant has been discontinued from the program as a result of his failure to participate." The report recommended that defendant be remanded to custody.

*C.* *Defendant's Motion to Withdraw from the Plea Agreement*

Several weeks after the probation status report was issued, defendant moved to withdraw his plea. His motion argued that he did not knowingly, intelligently, and voluntarily waive his constitutional rights to a jury trial because he did not understand the uncertain terms of the plea bargain, and specifically, what it meant when it stated he could withdraw his plea if the diversion program was "not feasible." The People opposed the motion.

The trial court denied defendant's request to withdraw. Having reviewed the transcript from the plea hearing, the trial court explained their agreement that defendant would go to a diversion program if it was "feasible. Meaning, would he be accepted." The parties learned AIC did not have room, but Steps for Success was willing to work with defendant. The trial court acknowledged that it offered to let him withdraw his plea and proceed to trial when he first failed to engage in the diversion program, but defendant had confirmed that he wished to participate. So, the trial court explained that although "there might have been that little window of when he could get out of it" when AIC was unavailable, defendant asserted his desire to participate, and then failed to engage in the available program. The trial court concluded that defendant's lack of engagement was not sufficient grounds to set aside the plea deal and denied the motion.

Although the trial court gave defendant six more weeks to complete the program, defendant was not successful. The trial court observed that defendant "completely failed to engage in the diversion program and judgment was subsequently entered in a felony."

## II. DISCUSSION

On appeal, defendant argues that the trial court failed to follow the terms of the plea agreement when it denied his motion to withdraw his plea, thus denying his right to

5

due process. Defendant argues that his failure to participate in either diversion program constituted *prima facie* evidence that diversion was not "feasible" for him. As a result, he contends that the terms of the agreement required that the court permit him to withdraw his plea, and that the court's failure to do so resulted in reversible error. The People counter that defendant's willful failure to engage in the treatment program did not enable him to withdraw from the plea deal.[1]

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.) On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." [Citations.]' [Citations.] 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.' " (*People v. Shelton* (2006) 37 Cal.4th 759, 767.) "[T]he 'interpretation of a contract is subject to de novo review where the interpretation does not

---

[1] We note that defendant's argument on appeal is one of contractual interpretation, while his motion in the trial court argued that good cause existed to withdraw from the agreement. Both arguments turn on the parties' understanding of the term "feasible" in the agreement. Indeed, at the hearings on defendant's motion to withdraw, the trial court considered the meaning of "feasible" and whether defendant's failure to engage in the diversion program meant that the program was "not feasible" under the terms of the plea agreement. The People also do not note any distinction between the two arguments and respond to the merits of defendant's contractual argument on appeal. Thus, we will not find the issue forfeited and will address it on the merits.

turn on the credibility of extrinsic evidence.' " (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 520.)

Here, the express terms of the plea deal support the trial court's interpretation. The plea agreement requires that defendant "must successfully complete" either diversion program, and that "[s]o long as the defendant is meaningfully engaged in treatment, judgment for [possession with intent to sell] will not be entered." Defendant could only withdraw his plea "if it is determined prior to or at sentencing that diversion is not feasible" for defendant. Thus, the parties agreed that if defendant failed to meaningfully engage in the program, the remedy was entry of judgment on the felony, not withdrawal from the plea agreement. The clear intent of the plea deal was to allow defendant to successfully complete a diversion program, which would let him avoid a felony on his record. Defendant's interpretation would be contrary to that intent, as it would permit defendant to refuse to engage in the diversion program and then escape judgment by withdrawing from the plea agreement. Thus, the term permitting defendant to withdraw from the plea deal "if it is determined . . . that diversion is not feasible" cannot be read to encompass defendant's willful refusal to participate in diversion.

The extrinsic evidence surrounding the agreement further supports this interpretation. The parties entered into the plea agreement at the eleventh hour. They had not yet worked through the details, but were under pressure to formalize their agreement so that the trial court felt comfortable excusing the assembled jurors and cancelling the trial. However, the AIC program was full at the time and defendant would not know whether he would qualify for Steps to Success for approximately two months. Rather than deny defendant the opportunity to enter a plea, the trial court permitted the parties to memorialize a conditional agreement sufficient to cancel trial, while ensuring they did not obligate defendant to complete a diversion program that was later found to be unavailable or medically untenable. Indeed, the trial court noted that if they could not "hammer out all the issues, and we all know what they are," then defendant could

7

withdraw.  The issues, as the trial court and the parties understood them, were whether an available program would accept defendant under his required conditions.  And indeed, Steps to Success was available and attempted to work with defendant, and the agreement permitted him to use medical marijuana if it was approved for treatment.  Thus, under the terms of the agreement, diversion was "feasible" for defendant.  He simply failed to attend the program and offered no reasons for his failure.

Defendant notes that the trial court offered to let defendant withdraw from the agreement after defendant initially failed to engage in the program, but the trial court did so as an offer of leniency.  The trial court repeatedly expressed its desire to keep defendant, a 19 year old, from having a felony on his record and gave defendant multiple opportunities to engage in the diversion program.  As the trial court later explained, this offer was perhaps a "little window" when defendant could get out of the plea deal when the AIC program was not available, but he confirmed he wanted to complete the diversion program, so they went forward.  The trial court's inquiry into whether defendant desired to comply with the plea agreement did not alter the agreement's terms.

As Steps to Success attempted to work with defendant, yet defendant failed to meaningfully engage in the program to the point where he was discontinued, the trial court did not err when it denied defendant's request to withdraw from the agreement.

## III.  DISPOSITION

The judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

MAURO, Acting P. J.

/S/

KRAUSE, J.

9